May it please the court. I'm Sterling Stiers, counsel for the appellants in this matter. This case provides the opportunity to revisit the issue raised in footnote 6 of the Paradise Holdings case to establish a per se rule that admiralty jurisdiction lies when the wrong involved is the negligent operation of a vessel on navigable waters. I could not disagree with the appellee's position more that there is no federal interest over the personal watercraft area of Mission Bay in San Diego. Indeed, the federal government has statutorily designated all waters of Mission Bay as a federal regulated navigation area pursuant to Title 33 of the Code of Federal Regulations at Section 165.1122. This area though is currently in fact closed to commercial shipping entirely, correct? I disagree with that, Your Honor. It is closed to vessels other than personal watercraft. And I submit to you that personal watercraft can be a commercial vessel. Such as in the case at Barr, the vessel at issue was a rental craft. And as a result of the accident, that rental craft was taken out of service during the height of the summer season and the appellants were not allowed to rent that craft out. And indeed, the personal watercraft area is closed to a type of that, closed to vessels other than personal watercraft. It is not closed to commercial traffic. Indeed, a charter agreement renting a jet ski would be a maritime contract. The insurance on such a vessel that operates in and out of the personal watercraft area would be a maritime insurance and therefore a maritime jurisdiction. May I ask you a question about closed to anything other than personal watercraft? I mean, it's not physically closed. No, Your Honor. It's marked by a buoy, if I understand it correctly. Correct. It's a line of buoys. It's not physically closed. If you wanted to take a personal watercraft out to the ocean and sail it to Japan, you could. You could, absolutely. Conversely, however, what we would normally think of as a commercial vessel, come in physically. Physically into the personal watercraft area? Absolutely. Because? There's no physical barrier. In the depth of the water? Well, it varies. It's a basin. I believe it's the deepest point. It's 12 feet and up to the shore. Okay. And really commercial enterprise is not required. In the uniform application of maritime law, and the uniform rules of conduct are a paramount federal interest. And as noted by the Supreme Court in Foremost v. Richardson, these federal interests can only be fully vindicated if all operators of vessels in navigable waters are subject to the uniform rules of conduct. The law does not allow for one set of rules to apply in the personal watercraft area and then just several feet away, a different set of rules. What is required to invoke abnormality jurisdiction is the potential to disrupt maritime commerce. In the present case, the potential to disrupt maritime commerce most certainly exists, and as I stated, we believe that maritime commerce was indeed directly impacted. Even if, however, no maritime commercial activity took place in the personal watercraft area, abnormality jurisdiction would still apply. This is because actual commerce is not required. As noted in the Grubart case, the U.S. Supreme Court said the court must assess the general features of the type of incident involved to determine whether the incident involved has a potentially disruptive impact on maritime commerce. I can think of no scenario where passengers are thrown off of a vessel engaged in traditional maritime activity in navigable waters where abnormality jurisdiction would not apply. I'll go ahead and reserve the rest of my time for rebuttal, Your Honors. Certainly. Thank you, Your Honor. My name is Tom Paulso. I represent Haley Colombo and Jessica Slagle. Counsel is incorrect about the site where this occurred. The depth of the water is 8 feet. There is a string of buoys across this mouth of a cul-de-sac, which creates an artificial barrier. But the legal barrier is that all boats, much less commercial fishing, are forbidden from that area. Well, let me ask you, that's kind of interesting to me, because it's a legal barrier, not a commercial one. That could change as we speak, or it can be ignored. I mean, the defendant here basically, or not the defendant, but the, what's his name, Cole, ignored the rule, which was speed limit. So people can't ignore rules, whether they should or shouldn't. And if you did ignore the rule, you could go through. It's just, it's a virtual barrier, but not a real one. I think it is the rule. I don't know that that even matters, really. I'm just interested because the record is a tiny bit fuzzy on it. It may or may not. But what I'm suggesting to Your Honors is that it is both a mixed, it's a barrier that is mixed in fact and in law. Because you have a shallow basin, you have a cul-de-sac, you are three miles from the mouth of the area, there is no evidence of commercial shipping, you have a buoy line with signs that is in force now, always has been, and there is no conceivable commercial shipping usage in that area. If he had decided that it was not only cool to drive 25 miles an hour in a circle, but that it would be cool to go head toward the ocean, what's the difference between that and heading toward the mouth of the St. Lawrence waterway? I mean, it could be done. It wasn't done. It could be done. And had it been done, and had the same accident occurred, there as where it did, it's just simply no question that that would have an effect on, would be traditional maritime activity with an actual effect on commerce. The difference is what the courts have developed from Susan v. Ruby forward, including this circuit, and that is that in the first prong of the connection test, the type of location where the incident occurs is germane, relevant, and considered. So this position that mission-based jet sports is offering to turn the clock back and say, well, if it occurred here and it could have occurred there, then we have to determine the potential impact on maritime commerce there. That's been rejected as a matter of law by Susan v. Ruby, the H2O houseboat case. All of those cases say the court must consider the type of location where the incident occurred. Does it matter what the location is beyond the dividing line between that location and that location? Navigable waters and non-navigable waters. Oh, yes, I think so, because each of the cases that we discuss in our brief, which you're well familiar, I'm sure, got past the navigable waters issue. But navigable waters is no longer the litmus test for advocacy jurisdiction. But what has happened since Susan v. Ruby is that the connection test has been rejected. And the location test is no longer the litmus test for advocacy jurisdiction. The location test has been refined to include the type of location where the incident occurred. And so once you get past the locus test or location test, whatever the right word for it is, then you must go to the two-pronged connection test, which is a more refined inquiry than that required for the location test. So those seem to be the two central flaws to their argument are, number one, the idea that personal watercraft rentals and sport fishing and so forth are commercial activities. And we cited to you a long line of cases that say no, the purpose of advocacy jurisdiction that originated in the Constitution was to protect commercial shipping, not pleasure craft. So I think that argument has been rebutted by cases that are decades old. The second flaw in their argument is, and counsel admits to it inferentially, that we visit the holding in paradise holdings that if it's navigable and could occur anywhere, like in the mouth of the St. Lawrence Seaway or the mouth of the San Diego Harbor, therefore the connection test is satisfied. And all the cases of this district of, first of all, Justice Scalia proposed that very test and CSUN rejected by the majority. In every case, this circuit has decided since then has rejected that test. So he's asking you to turn the clock back, not only contrary to your own precedent, but contrary to the majority of the United States Supreme Court. And so the list of cases goes on until the end of the year. And we have a list of very recently where the type of location where the incident occurred is germane and material to the first prong of the connection test. And that just makes sense, because as a practical matter, what we have here is a terrible circumstance where the private parts of these young women was ripped out by a single personal watercraft incident in an area not used by, never used by, forbidden to be used by, and which the district court found to be, as a matter of fact, inaccessible by commercial shipping. And that factual finding has not been challenged by them. And to apply that to take that circumstance and say that there is a federal interest in advocacy jurisdiction just to me does not make practical sense. And so based upon the modern law, starting with CSUN and continuing up until today, I suggest that, Your Honor, that the district court's order was correct, and I ask you to confirm it. Thank you. Your Honors, you're correct that the use of the personal watercraft today could change everything in the United States. I mean, at any minute, the U.S. Coast Guard has jurisdiction over the area. The federal government could take that immediately. And conversely, if they could But do you agree that location is not enough? No, I don't agree to that. The case that's dispositive on this issue is Foremost v. Richardson. In Foremost, you had two recreational vessels that collided in a remote tributary 20 miles up the Amite River, nowhere near any commercial traffic, in extremely shallow water. The court held that those waters were navigable, but most importantly, the court held that there was a potential to disrupt maritime commerce. This is despite the fact that there was no commerce anywhere near there. And the court reasoned that had the accident occurred at the mouth of the St. Lawrence Seaway, on the eastern seaboard of the United States, half the country away, that there could have been a potential disruption of maritime commerce. In the case, N. Ray Strail, which we cited in our brief, it was a vessel-restricted area for recreational vessels only. A personal watercraft struck a swimmer, and the court in that case held that the canoe rental business that was adjacent to where the accident happened, the mere news of the accident had the potential to disrupt maritime commerce in the canoe rental business on those waters. So really, the type of location, it's navigable waters. That's the type of location. And it's clearly the Federal Government has taken an interest in this area. Otherwise, they would have said not all waters of Mission Bay, and not all vessels. But the statute cites all waters of Mission Bay, and it describes vessels, which would include personal watercraft.  The Court will take a brief recess before hearing the remaining cases on calendar. Thank you.
judges: Rymer, Graber, Aldrich